# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# BOWLING GREEN DIVISION
# No. 1:10-CV-00183-R

IN RE: Stetler Cross Ministries, Inc.,                                           Debtor

Stetler Cross Ministries, Inc.,                                                 Appellant

v.

Daniel M. McDermott,
*Trustee*                                                                             Appellee

## **MEMORANDUM OPINION**

This case is on appeal from the United States Bankruptcy Court for the Western District of Kentucky. The Bankruptcy Judge in the instant case ordered attorney's fees disgorged pursuant to 11 U.S.C. § 330(a)(2). This matter has been fully briefed by both sides, and is ripe for adjudication. The ruling of the Bankruptcy Court is AFFIRMED.

## **BACKGROUND**

Frank Yates ("Appellent") represented Stetler Cross Ministries, Inc., for their Chapter 11 bankruptcy. Frank Yates prepared and filed a Chapter 11 Bankruptcy Petition on August 3, 2009 for the debtor. On August 15, 2009 Frank Yates and Stetler Cross Ministries, Inc., entered into a written agreement for legal services. On August 17, 2009, Frank Yates disclosed to the Bankruptcy Court that he received a $2,000 retainer payment from the Debtor in connection with the bankruptcy case. On May 4, 2010, the US Trustee filed a motion to disgorge Yates's retainer for failure to comply with bankruptcy procedure. On July 7, 2010, the Bankruptcy Judge granted the motion to disgorge.

## **ANALYSIS**

Appellant presents two primary issues on appeal. The first issue is whether the retainer was ever property of the estate and therefore under the control of the Bankruptcy Court and subject to disgorgement. The second issue is whether, if the Bankruptcy Court had control of the retainer, disgorgement was a lawful and appropriate remedy.

**I. Authority to Disgorge**

Appellant argues that the Bankruptcy Court had no authority to disgorge the retainer because the payment was a prepetition classic retainer[1] and therefore never property of the estate. There are issues, however, with both classifying the retainer as prepetition and classifying the retainer as a classic retainer.

*1. Classifying the Retainer as Prepetition*

To be a prepetition classic retainer, Appellant must naturally first show that the agreement and payment were actually prepetition. Appellant and Debtor entered into a written services contract, which provided for the retainer, on August 15, 2009 – 12 days after the August 3, 2009 petition filing date. While this would seem to be conclusive evidence that the agreement was postpetition, Appellant argues that an oral contract was present between Appellant and Stetler Cross Ministries, Inc., prior to the written agreement. There is some evidence that this may be accurate, since the written agreement states that it is reducing a prior agreement to writing. However, no date of such a prior agreement is mentioned. Appellant has produced no evidence of the date of such a prior oral agreement, for example by either his or his client's affidavit. Appellant has also produced

---

[1] A classic retainer is one that is earned upon receipt in exchange for the attorney's availability to the client. It is understood that any actual work is subject to separate billing by the attorney.

no evidence to indicate that the payment from the prior oral agreement was received prepetition.[2] Even if the agreement were prepetition, the payment would also have to be made prepetition, or else the payment would have involved estate property.[3] Accordingly, there is insufficient evidence to indicate that any agreement and payment were prepetition. The retainer was therefore property of the estate at the time of transfer, and was within the control of the Bankruptcy Court.

*2. Classifying the Retainer as a Classic Retainer*

Even assuming that the agreement and retainer payment were prepetition, Appellant must also demonstrate that the retainer was actually a classic retainer and not a security retainer.[4]

Appellant contends that because the agreement states on its face that the retainer is a 'general retainer,' that statement is binding as to the interpretation of the contract retainer as a classic retainer. However, since "merely stating that a retainer is fully earned upon receipt and non-refundable does not satisfy the requirements of a classic retainer," merely stating that something is a 'general retainer' does not satisfy the requirements of a classic retainer. *In Re National Magazine Publishing Co.*, 172 B.R. 237, 240 (Bankr. N.D.Oh. 1994). Rather, the "court may look beyond any label applied by the parties when construing or interpreting the contract." *Id.* (citing *Cimorelli v. New York Cent. R.R. Co.*, 148 F.2d 575 (6th Cir. 1965). Determining whether the retainer is a classic retainer or a security retainer is a question of state law. *Butner v. United States*, 440 U.S. 48,

---

[2] If Appellant had received the $2,000 payment prior to the bankruptcy petition filing, this Court assumes that Appellant would have been able to produce a check or bank statement to demonstrate as much. No such evidence has been produced.

[3] Once property of the estate, any payments would have to be approved by the Bankruptcy Court, even if the agreement was entered into prior to the bankruptcy petition.

[4] A security retainer is one that an attorney collects at the beginning of a representation and then draws from as actual legal work is performed. In the Bankruptcy context, a draw from a security retainer must be approved by the court.

3

54 (1979). Looking to the other circumstances surrounding this agreement, it is clear that the retainer has the characteristics of a security retainer rather than a classic retainer.

First, Appellant states that the agreement was initially entered into orally, and later memorialized in writing. However, under Kentucky law, a classic retainer must be accompanied by a writing. *Kentucky Bar Association Ethic Opinion E-380* (June 1995), *referenced in, e.g.*, *Kentucky Bar Ass'n v. Adair*, 203 S.W.3d 144, 145 (Ky. 2006). Failure to meet the requirements of E-380 can result in disgorgement. *Clendenin v. Kentucky Bar Ass'n*, 114 S.W.3d 858, 860 (Ky. 2003). Accordingly, while the Ethics Opinion itself is only advisory, the opinion has been adopted and applied by the Kentucky Supreme Court such that a written agreement is a clear requirement for a classic retainer. Kentucky Supreme Court authority is binding on this Court, even if E-380 is not. Accordingly, the fact that the retainer was not originally in writing - and not in writing when the fee was paid if, as Appellant contends, he was paid prepetition - cuts against finding the retainer to be a classic retainer. Even if the retainer was determined to be a classic retainer, disgorgement would still be an appropriate remedy for Appellant's failure to follow his ethical obligations. *Id.*

In addition, the retainer was treated by the parties as a security retainer, and not a classic retainer. A true classic retainer pays solely for a lawyer's availability, and "is not paid for the purpose of applying the same towards hourly work." *In Re Nat'l Magazine Publ'g*, 172 B.R. at 241. The legal services agreement includes a provision for the retainer, immediately followed by a provision for hourly service. It is unclear, from the face of the contract, whether the hourly services were a separate fee or were to initially be billed against the 'general retainer.' *In Re Tundra Co.*, 243 B.R. 575, 583 (Bankr. D. Mass. 2000) (using the language in the contract to interpret the meaning of 'general retainer.'). Accordingly, this Court must look to the surrounding circumstances.

4

Looking through the Bankruptcy Court docket sheet contained in the record, there is no evidence that Mr. Yates ever requested payment on an hourly basis following the bankruptcy filing. The issue of Mr. Yates's retainer was not raised until April 29, 2010, which was almost 9 months after the initial filing. It is also clear from the Docket that Mr. Yates had likely spent a significant number of hours working on the case prior to April 29, 2010. Under the Bankruptcy Code, the court can award reasonable compensation for services. However, no such attempt to attain compensation, in 9 months of work, was made. Such a failure to collect reasonable compensation seems to indicate that the $150 hourly fee was initially meant to come from the retainer. This setup results in a security retainer that remains the property of the estate even if collected prepetition.

Accordingly, because there is insufficient evidence to indicate that the retainer was entered into and paid prepetition and intended by the parties to be a classic retainer, the retainer payment was a postpetition security retainer within the control of the Bankruptcy Court.

## II. DISGORGEMENT AS A REMEDY

Appellant also contests whether the appropriate remedy for his actions was disgorgement even if the retainer was a postpetition security retainer. Appellant claims that disgorgement is a harsh and extraordinary remedy that was not warranted in this case. In support of this, Appellant cites to the Bankruptcy Court's finding that the Bankruptcy Code violation was negligent, and not willful.

Bankruptcy Judges have wide latitude to enforce procedural rules in their courts. Accordingly, an order of disgorgement is only reviewed for abuse of discretion. *In Re Geraci*, 138 F.3d 314, 319 (7th Cir. 1998). It is uncontested that if the retainer was property of the estate, the disbursement from a trust account to Mr. Yates's personal account was unauthorized. Disgorgement

has generally been recognized as an appropriate remedy for unauthorized payments. *In Re Triple S Rests., Inc.*, 130 Fed. Appx. 766 (6th Cir. 2005) (Order of disgorgement upheld for violations of rules). "[B]ankruptcy courts have broad and inherent authority to deny any and all compensation where an attorney fails to satisfy the requirements of the Code and Rules . . . Disgorgement may be proper even though the failure to disclose resulted . . . from negligence or inadvertence." *In Re Kisseberth*, 273 F.3d 714 (6th Cir. 2001). *See also In re McCrary & Dunlap Constr. Co., LLC*, 79 Fed. Appx. 770, 779 (6th Cir. 2003) ("We do not suggest, however, that a finding of willfulness must in all instances precede an order requiring complete disgorgement of fees."). Since a rules violation is uncontested, and disgorgement can be ordered for willful or negligent violations, nothing more need be establish to demonstrate that disgorgement was an available remedy. Appellant has done nothing to demonstrate that there was an abuse of discretion when the Bankruptcy Judge ordered disgorgement.[5] Appellant has offered many reasons as to why disgorgement may not be the best remedy in the current situation. However, the order of disgorgement has already been entered, and Appellant must show why such an order was an abuse of discretion. This heavy burden has not been met. In addition, while it is true that the Bankruptcy Judge found that the violations were due to negligence, a review of the transcripts from hearings in front of the Bankruptcy Judge makes it clear that the Judge thinks this is an extraordinary case where disgorgement was appropriate nonetheless.[6]

---

[5]This applies equally to Appellant's failure to demonstrate that declining to grant *nunc pro tunc* relief was an abuse of discretion.

[6]Judge Lloyd had the following to say in this case: "[Mr. Yates,] I think you were hired by Ms. Stetler because she knew that you would file some documents for her and drag this case out as long as possible, without care to the rules and obligations of counsel for Chapter 11 debtor, without the obligations owed by a Chapter 11 debtor to this Court, its creditors, and all of

## CONCLUSION

For the foregoing reasons, the decision of the Bankruptcy Court is AFFIRMED.

---

the other parties in interest. I am offended by that. And you should be ashamed, if you have drawn that money out of your escrow account and utilized those funds." *Transcript of hearing held Thursday, April 29, 2010*, pgs. 43- 47, Bankruptcy Court Docket Sheet No. 88, Petition No. 09-11332 (Bankr. W.D.Ky. September 15, 2010); "Mr. Yates, you've let this Court down . . . . I follow the rules, [opposing counsel] follows the rules . . . but not you, Mr. Yates. And not your client, Linda Stetler. Because what you all do is you take advantage of everybody else observing decorum, filing pleadings that make sense, making legal arguments that have merit, filing adversary proceedings that make sense, that have a basis in fact [or] law. Everybody else follows the rules except Ms. Stetler and her counsel. . . . This Court has had enough of Ms. Stetler and Mr. Yates." *Transcript of hearing held Thursday, August 19, 2010*, pgs. 12 - 13, Bankruptcy Court Docket Sheet No. 75, Petition No. 09-11332 (Bankr. W.D.Ky. September 15, 2010)